UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAMION BROMFIELD,

Plaintiff,

v.

CHARLES MCBURNEY, *et al*,

Defendants.

Case No. C07-5226RBL-KLS

ORDER TO SHOW CAUSE

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. This matter comes before the Court on the filing of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) by defendants Charles McBurney, A. Nelson, George Wigen, Doe McClusky, Carl Sadler, and Jose Moncevias, all employees of the Geo Group Inc.[1] (the

[1]While plaintiff refers to these defendants as being employees of the "Geo Corporation" in his complaint (see Dkt. #5, pp. 1-2), that corporation actually appears to be The GEO Group, Inc. See http://www.thegeogroupinc.com/northamerica.asp?fid=105; http://www.ice.gov/pi/dro/facilities/tacoma.htm.

"GEO defendants"). (Dkt. #11). After reviewing the GEO defendants' motion, plaintiff's response thereto and the balance of the record,[2] the Court hereby finds and orders as follows:

I. Standard of Review

The Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to the complaint. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). All material factual allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the light most favorable" to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Lee, 250 F.3d at 688. A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. Jones v. Community Development Agency, 733 F.2d 646, 649 (9th Cir. 1984); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). Thus, even though the Court is to construe the complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." Pena, 976 F.2d at 471.

Before the Court may dismiss a *pro se* complaint for failure to state a claim, it "must provide the *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to dismissal." McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992); see also Noll v. Carlson, 809 F.2d 1446, 1449 (9th Cir. 1987) (district court erred by not notifying *pro se* prisoner litigant of amended complaint's deficiencies and allowing him leave to amend). As explained in greater detail below, none of the allegations in the complaint state a proper claim against any of the individually named GEO defendants upon which relief may be granted. Accordingly, while the Court finds that dismissal of the complaint against the GEO defendants under Fed. R. Civ. P. 12(b)(6) is proper, and is inclined to so recommend, this order to show cause is being issued to give plaintiff an opportunity to cure, if possible, the deficiencies contained therein.

---

[2]No reply brief was filed by the GEO defendants.

II. *Bivens*

Plaintiff currently is a detainee at the Northwest Detention Center ("NWDC"), located in Tacoma, Washington, which is a federal immigration detention facility administered under contract by The GEO Group, Inc.[3] As noted above, the GEO defendants are all employees of The GEO Group, Inc. Plaintiff has brought this action against the GEO defendants, defendant Michael Melendez, who plaintiff claims is an employee of Immigration and Customs Enforcement ("ICE"), a branch of the United States Department of Homeland Security, and defendant Jack Bennett,[4] pursuant to both Bivens v. Six Unknown Fed. Narcotics Agents, 430 U.S. 388 (1971), and the Americans with Disabilities Act ("ADA"). Plaintiff's ADA claim shall be addressed separately below.

In Bivens, the Supreme Court held that "a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court." Malesko v. Correctional Services Corp., 534 U.S. 61, 66 (2001). Subsequently, the Supreme Court recognized the existence of an implied damages remedy for violations of the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment by federal officers as well. Id. at 67; see also Davis v. Passman, 442 U.S. 228 (1979); Carlson v. Green, 446 U.S. 14 (1980). Since Davis and Carlson, however, the Supreme Court consistently has declined to extend Bivens liability to new contexts or new categories of defendants. See Malesko, 534 U.S. at 68.

For example, in FDIC v. Meyer, 510 U.S. 471 (1994), the Supreme Court "unanimously declined an invitation to extend *Bivens* to permit suit against a federal agency," emphasizing that "'the purpose of *Bivens* is to deter *the officer*,' not the agency." Malesko, 534 U.S. at 69 (quoting Meyer, 510 U.S. at 485) (emphasis in original). Employing the same reasoning it used in Meyer, the Supreme Court in Malesko further declined to extend Bivens liability to a private corporation which had contracted with the federal Bureau of Prisons to operate a community correctional facility that housed federal inmates. Id. at 63, 70-74. The Supreme Court, however, has yet to specifically address the question of whether or not

---

[3] See http://www.thegeogroupinc.com/northamerica.asp?fid=105; http://www.ice.gov/pi/dro/facilities/tacoma.htm; (Dkt. #5, p. 1).

[4] Although plaintiff does not expressly state who defendant Bennett is other than to indicate he will be replacing defendant Melendez in his current position, because defendant Bennett has not been put forth by plaintiff as a GEO defendant, and because he is being represented in this case by the United States Attorney, it appears he is an employee of ICE as well. See (Dkt. #5, p. 1; Dkt. #10).

individual employees of such a private entity are themselves subject to Bivens liability.

A number of lower courts, including two circuit courts, have addressed this issue, but have come to conflicting conclusions. For example, both the Fourth and Tenth Circuits have found Bivens liability to be inapplicable to private individuals who are not federal officers. See Peoples v. CCA Detention Centers, 422 F.3d 1090 (10th Cir. 2005); Holly v. Scott, 434 F.3d 287 (4th Cir. 2006). On the other hand, at least two district courts have concluded otherwise. See Purkey v. CCA Detention Center, 339 F.Supp.2d 1145 (D.Kan. 2004); Sarro v. Cornell Corrections, Inc., 248 F.Supp.2d 52 (D.R.I. 2003).

The Ninth Circuit has not yet been directly presented with this issue, but has indicated that Bivens may be the proper vehicle for seeking recovery against individual employees of a private corporation that contracts with the federal government to operate its correctional institutions. See Agyeman v. Corrections Corporation of America, 390 F.3d 1101, 1104 (2004). The Court need not decide this issue in this case, however, as the GEO defendants do not argue they are not subject to Bivens liability.[5] Accordingly, for purposes of this motion, the Court shall assume plaintiff can bring suit against the GEO defendants under Bivens for their alleged constitutional violations.[6]

Although "more limited in some respects," a Bivens action "is the federal analog to suits brought

---

[5]Nor does this issue bring into question the Court's jurisdiction to hear this matter. "Failure to state a claim under federal law is not the same thing as failure to establish federal question jurisdiction, . . . even if that claim is later dismissed on the merits under" Fed. R. Civ. P. 12(b)(6). Bollard v. The California Province of the Society of Jesus, 196 F.3d 940, 951 (9th Cir. 1991). "[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) (emphasis in original). Thus, "unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous,'" the Court has jurisdiction if plaintiff's right to recover under his complaint "'will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'" Id. (quoting Bell v. Hood, 327 U.S. 678, 682-83, 685 (1946)). Nor, for the same reason, does the fact that there also may be some issue as to whether plaintiff may seek injunctive relief against the GEO defendants in a Bivens action (see discussion below) divest this Court of its authority to adjudicate the case on its merits.

[6]As indicated above, the Court also shall assume plaintiff's claims can go forward here under Bivens, even though he seeks only injunctive relief and there appears to be some question as to whether injunctive relief may be sought in a Bivens action. See Reuber v. United States, 750 F.2d 1039,1061 (D.C. Cir. 1985) (injunctive relief traditionally presumed available regardless of whether plaintiff also may have Bivens action for damages); Stephens v. Herring, 827 F.Supp. 359, 364 (E.D.Va. 1993) (Bivens concerned only with damages, not injunctive relief) (citing Mullis v. United States Bankruptcy Court for the Eastern Dist. of Nev., 828 F.2d 1385, 1394 n.21 (9th Cir. 1987)); but see Bunn v. Conley, 309 F.3d 1002, 1009 (7th Cir. 2002) (Bivens claim can be brought for violation of constitutional rights regardless of nature of relief sought); Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir. 1991) (prisoner seeking both damages and injunctive relief cannot bring Bivens action until available administrative remedies are exhausted); Kane v. Winn, 319 F.Supp.2d 162, 213 (D.Mass. 2004) (injunctive relief also can be sought via Bivens action) (citing Farmer v. Brennan, 511 U.S. 825, 851 (1994) (remanding Bivens action in which prisoner sought both damages and injunctive relief)); see also Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1228 (10th Cir. 2005) (noting that some courts have treated Eighth Amendment claims against federal prison officials as Bivens actions even when injunctive relief is sought, whereas other courts have assumed separate non-statutory basis for seeking such relief).

against state officials" under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006). The Ninth Circuited further has stated that "[a]ctions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (applying same statute of limitations to Bivens actions as is applied to actions brought pursuant to section 1983); see also Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (applying rationale of Heck v. Humphrey, 512 U.S. 477 (1994), to Bivens actions); Alexander v. Perrill, 916 F.2d 1392, 1396 (9th Cir. 1990) (applying same qualified immunity analysis to defendants in Bivens actions as to those in section 1983 actions); Trotter v. Watkins, 869 F.2d 1312, 1318 (9th Cir. 1989 (scope of immunity available same in both actions).

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985); see also Samuel v. Michaud, 980 F.Supp. 1381, 1396 (D.Idaho 1996) (both elements must be present to hold federal defendants liable under either Bivens or section 1983) (quoting Leer v. Murphy, 844 F.2d 628, 632 (9th Cir.1988)).

Plaintiff also must allege facts showing how the individually named GEO defendants caused or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981); see also Samuel, 980 F.Supp. at 1396 ("A person deprives another of a constitutional right, within the meaning of *Bivens*, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation complained of.") (citing Leer, 844 F.2d at 633). A defendant cannot be held liable pursuant to 42 U.S.C. § 1983, or again in this case under Bivens, solely on the basis of supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978); see also Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982); Terrell, 935 F.2d at 1018 (*respondeat superior* theory of liability inapplicable to Bivens actions).

In this case, the Court need not address the issue of whether the GEO defendants were acting under color of federal law at the time the allegedly engaged in the conduct complained of, as, for the

reasons set forth above, it is assumed that Bivens liability may attach here, and thus for that purpose that they were federal actors. As for whether plaintiff was deprived of his federal statutory or constitutional rights due to the personal participation of the individually named GEO defendants, those questions shall be addressed below with respect to each of his specific claims.

## III. Plaintiff's *Bivens* Claims

### A. Access to State Laws and Forms and to Federal Civil Rights Case Law

Plaintiff claims in his complaint that defendant Melendez initiated a policy that prevents detainees at the NWDC from gaining access the laws of the state where they were incarcerated, thereby preventing them from being able to challenge their convictions or sue ICE and ICE employees in state court. More specifically, plaintiff claims the law library at the NWDC provides no access to case law from either the State of Washington or the State of Oregon, which, at least with respect to the State of Oregon, he requires to challenge his criminal sentence and conviction. (Dkt. #5, p. 6). He similarly claims that he was not given access to federal civil rights case law, and that defendant Melendez was informed and knew of the above deficiencies, but failed to cure them. (Id. at pp. 6-8).

Plaintiff claims that had such access been given, he "would have been able to prepare his Petition to the Courts of Oregon." (Id. at p. 7). Plaintiff further claims that he also required certain forms in order to approach the Oregon courts to file a "petition" against state officials for having violated his rights, but that he was prevented from doing so because defendant Melendez failed to provide those forms, even though he had a right to be given those forms. (Id. at pp. 5-6, 8-10). The GEO defendants argue that a detention facility is not required to provide every form or case desired by a detainee, but merely those the detainee needs to challenge the conditions or fact of his or her confinement. In addition, they argue plaintiff can get those legal materials he desires from either legal counsel or other outside sources. As such, the GEO defendants assert plaintiff's claims do not rise to the level of a constitutional violation.

The Court agrees plaintiff has failed to state a claim upon which relief may be granted, but not for the reasons put forth by the GEO defendants. Indeed, the Court finds it need not address the actual merits of plaintiff's denial of access to legal materials claims here, as the only defendant he names in connection with those claims is defendant Melendez, who, as noted above, is not a GEO defendant. That is, nowhere in the complaint does plaintiff set forth any facts showing that any of the named GEO defendants caused or personally participated in causing him to be denied access to the legal materials he sought.

B. Confidentiality of Telephone Calls to Counsel and Access to Toll-Free Numbers

Plaintiff claims defendant Melendez initiated and imposed a policy of providing no confidentiality for telephone communications between detainees at the NWDC and their counsel. Specifically, plaintiff alleges defendant Melendez has recorded and monitored calls between NWDC detainees and their counsel and prospective counsel. Such recording and monitoring, plaintiff claims, violates his due process rights under the Fifth Amendment and his right to counsel under the Sixth Amendment. In addition, plaintiff claims he has the right to reach prospective counsel who advertise through the use of toll-free telephone numbers, and to reach government agencies which also use such numbers to gain supporting documents to help him in his immigration case, but that the telephone system that defendant Melendez has set up at the NWDC prevents him from gaining access to those numbers.

The GEO defendants argue the above claims must fail here as well, because telephone service at the NWDC is provided by the federal government, and none of the GEO defendants has any control over use of the telephones. Further, the GEO defendants argue plaintiff has failed to establish any limitations in such use rise to the level of constitutional violations. Again, however, the Court finds it need not reach the merits of plaintiff's telephone restrictions claims. As with plaintiff's access to legal materials claims, the Court once more finds the GEO defendants not liable on the basis that only defendant Melendez has been implicated as being involved in the alleged unconstitutional restrictions of telephone usage. That is, plaintiff has not set forth any facts showing any of the GEO defendants caused or personally participated in causing those restrictions.

C. Opening of Legal Mail

Plaintiff claims defendant Melendez instituted a policy at the NWDC that all outgoing legal mail from detainees be opened, contrary to what is allowed under the law of the Ninth Circuit and the Supreme Court. Again, however, none of the GEO defendants can be held liable for the institution of this policy, as plaintiff has failed to show how they caused or personally participated in causing it to be instituted. That is, once more, plaintiff has only set forth facts alleging defendant Melendez instituted such a policy, and, on this basis, the Court finds no valid claim has been made here.

Plaintiff does further allege, however, that he sent two letters, which he claims were opened and read by defendants McBurney, McCluskey, Wigen, Sadler, and Moncevias, despite plaintiff's expectation that those letters would remain private. One of those letters plaintiff sent to a company that had sent him

"support letters" for "his case," and another he sent to Noel Bromfield, "to let him know of the bond hearing so that he could appear" at that hearing. (Dkt. #5, p. 12). Plaintiff further claims that due to those letters being opened and held by the above GEO defendants, they did not get to their intended recipients, and he was "denied that witness," presumably Mr. Bromfield. (Id. at p. 13).

The GEO defendants argue that even if the two letters were opened and read as plaintiff alleges, that does not provide the legal basis for a constitutional violation. They assert that his factual allegations fail to establish such a violation, because the screening and reviewing of detainee mail is necessary to maintain the security of the NWDC. The GEO defendants further assert that plaintiff fails to allege any facts that amount to a suppression of expression. It is unclear whether plaintiff is asserting a due process denial of access to the courts claim or a freedom of expression claim here. See Davis v. Goord, 320 F.3d 346, 351 (2nd Cir. 2003) (interference with legal mail implicates right both to access to courts and to free speech). The Court, therefore, shall analyze his claim under both approaches.

1. Access to the Courts

"Prisoners have a constitutional right of access to the courts . . . grounded in the Due Process and Equal Protection Clauses." Cornett v. Donovan, 51 F.3d 894, 897 (9th Cir. 1995) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977); Murray v. Giarrotano, 492 U.S. 1, 6 91989)). "To ensure meaningful access," the government "has the affirmative obligation to provide inmates with 'adequate law libraries or adequate assistance from persons trained in the law.'" Id. This right of access to the courts, furthermore, is not limited to convicted prisoners. Id. at 897-98 (right guaranteed to people who are involuntarily committed to mental institution); see also Matzker v. Kerr, 748 F.2d 1142, 1151 (7th Cir. 1984), overruled in part on other grounds Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991) (right of access enjoyed by pretrial detainees).

The constitutional analysis the Court employs in evaluating access to the courts claims, however, is different depending on whether or not the individual asserting the right is a convicted prisoner. See Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1160 (9th Cir. 2003) ("Different criteria apply to restrictions placed on prisoners who are held *before* convictions.") (emphasis in original). In this case, plaintiff is an immigration detainee being held at the NWDC. There is no indication that he is being detained pursuant to a criminal conviction or other than with respect to deportation proceedings, which are civil in nature. See United States v. Solano-Godines, 120 F.3d 957, 960 (9th Cir. 1997); Ramirez v.

Immigration and Naturalization Service, 550 F.2d 560, 563 (9th Cir. 1977).

With respect to pretrial detainees, the issue for claims that are grounded in the Due Process Clause is whether the particular restrictions imposed amount to punishment. See Valdez v. Rosenbaum, 302 F.3d. 1039, 1045 (9th Cir. 2002) ("Pretrial detainees have a substantive due process right against restrictions that amount to punishment." ) (citing United States v. Salerno, 481 U.S. 739, 746 (1987); Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  Thus, a detainee's substantive due process rights will be found to have been violated if the restrictions are "imposed for the purpose of punishment." Id. (quoting Bell, 441 U.S. at 535).  There is no constitutional violation, however, if the restrictions "are 'but an incident of some other legitimate government purpose.'" Id.  In such circumstances, "governmental restrictions are permissible." Id. (citing Salerno, 481 U.S. at 747).

The first step "[i]n distinguishing between permissible restrictions and impermissible punishment" is to examine whether the restrictions are based on "an express intent to inflict punishment." Id.  If there is no indication of such an intent, the Court next considers "whether punitive intent can be inferred from the nature of the restriction." Id.  This latter determination generally turns on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it]." Id. (quoting Bell, 441 U.S. at 539). Accordingly, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id.; see also Simmons, 318 F.3d at 1160 (same).

Here, plaintiff has not set forth any facts or otherwise shown that the alleged actions of the GEO defendants in opening, reading and holding the two letters he sent were done with the express intent of punishing him.  On the other hand, based on the limited record before it, the Court cannot eliminate the possibility that punitive intent can be inferred from the nature of the mail restrictions the GEO defendants were alleged to impose on plaintiff's outgoing mail.  The GEO defendants argue that the screening and reviewing of mail is necessary to maintain the security of the NWDC.  That may be so.  However, there is no indication that this was the actual purpose for which plaintiff's letters were opened and read, or that the manner in which they were opened and read was appropriately tailored to that purpose.

To the extent plaintiff is making an access to the courts claim here, therefore, there is at least the question of whether the alleged actions of the above GEO defendants amounted to punishment.  As such,

the Court cannot say such a claim is clearly invalid at this stage of the proceedings. However, because plaintiff has not specifically set forth a denial of access to the courts claim as the particular legal basis for his claim that those GEO defendants violated the law by opening, reading and holding his two letters as alleged, the Court finds that claim insufficient. Plaintiff, though, shall have the opportunity to cure this deficiency by clarifying the basis for his claim as explained below.

2. Freedom of Expression

Pretrial civil detainees such as plaintiff "retain at least those constitutional rights . . . enjoyed by convicted prisoners." Bell, 441 U.S. at 545. Thus, plaintiff has at least those First Amendment rights to freedom of expression as are enjoyed by prisoners convicted of crimes. In the context of mail restrictions, when regulation impinges on a prisoner's constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). To determine "the reasonableness of the regulation at issue," there are several factors that are relevant to consider. Id.

First, "there must be a 'valid, rational connection'" between the prison's action and "the legitimate governmental interest put forward to justify it.'" Id. (citation omitted). Under this factor, the action "cannot be sustained where the logical connection" between it and "the asserted goal is so remote as to render the policy arbitrary or irrational." Id. at 89-90. The governmental objective or interest also "must be a legitimate and neutral one." Id. at 90. That is, the particular action at issue must operate "in a neutral fashion, without regard to the content of the expression." Id.

The second factor "is whether there are alternate means of exercising the right that remain open to prison inmates." Id. Thus, "[w]here 'other avenues' remain available for the exercise of the asserted right, . . . courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity" of the action. Id. (citations omitted). The third factor "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. In other words, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Id.

Lastly, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. On the other hand, "the existence of obvious easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id. Prison officials,

however, need not "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint" to satisfy this factor. Id. at 90-91. In other words, it "is not a 'least restrictive alternative' test." Id. Nevertheless, if a prisoner "can point to an alternative that fully accommodates" his or her "rights at *de minimis* cost to valid penological interests, a court may consider that as evidence" that the governmental action "does not satisfy the reasonable relationship standard." Id. at 91.

While the above factors generally have been applied by the Supreme Court to governmental action affecting incoming inmate mail (see Turner, 482 U.S. 78; Thornburgh v. Abbott, 490 U.S. 401 (1989)), the standards for evaluating restrictions on outgoing mail, though stricter, are not substantially different for purposes of this case. With respect to such restrictions, the Supreme Court has stated:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials . . . must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

Abbott, 490 U.S. at408 (quoting Procunier v. Martinez, 416 U.S. 396, 413-14 (1974)). Even under this standard, however, prison officials are not deprived "of the degree of discretion necessary to vindicate 'the particular governmental interest involved.'" Id. at 409 (quoting Martinez, 416 U.S. at 414).

The Supreme Court thus has further stated that:

> Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more . . . legitimate governmental interests.

Id. In other words, even with respect to outgoing inmate mail, the Court has "required no more than that" the challenged governmental action "be 'generally necessary' to a legitimate governmental interest." Id. at 411 (quoting Martinez, 416 U.S. at 414); see also Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) ("When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'") (quoting Abbott, 490 U.S. at 412).

This somewhat greater required showing on the part of the government is due to the recognition that "outgoing personal correspondence from prisoners" in general does "not, by its very nature, pose a serious threat to prison order and security." Abbott, 409 U.S. at 411, 413 (implications of outgoing

correspondence for prison security are of categorically lesser magnitude than implications of incoming materials). At no time, however, with respect to a prison's actions affecting either incoming or outgoing inmate mail, must a "least restrictive means" test be satisfied. Witherow, 52 F.3d at 265 (citing Abbott, 409 U.S. at 411-13).

Before getting to the merits of any First Amendment freedom of expression claim plaintiff may be asserting here, it must be noted he refers to the two letters he claims the GEO defendants opened, read and held as being "legal in nature." (Dkt. #5, p. 12). However, is not at all clear the letters – one to a private company and the other to a potential witness – actually constitute legal mail. See, e.g., Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (mail from public agencies, public officials, ACLU when not acting as plaintiff's own counsel, and news media not legal mail); Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) (mail from courts and prosecuting attorney not legal mail). That is, legal mail generally is confined only to mail between a detainee or inmate and his or her own counsel.

As discussed above, however, restrictions on outgoing mail that is not strictly "legal" in nature still must be generally necessary to a legitimate governmental interest. Again, while, as the GEO defendants assert, screening and reviewing detainee mail that is necessary for the purpose of maintaining the facility security may be reasonable, there is no indication this was the purpose for which the two letters plaintiff sent were opened, read and held. Nor has any argument or showing been made that the other three Turner factors have been met here. Accordingly, once more the Court cannot say plaintiff would be completely unable to assert a valid First Amendment freedom of expression claim here. Nevertheless, as explained above, because it is not clear plaintiff has intended to assert such a claim here, his claim is deficient, and he will be given the opportunity to clarify that claim.

D. Return of Outgoing Mail

Plaintiff claims that "the defendants, all" have a policy of returning to the senders mail that arrives at the NWDC for detainees, without informing the detainee to whom the mail is directed that it has been received and will be returned, which he asserts is "a violation of due process. (Dkt. #5, p. 13). Plaintiff further claims that notice regarding the returned mail is deliberately provided late, and that detainees are not given the opportunity to appeal the matter. Specifically, plaintiff claims that material sent to him by his attorney was returned by "the Defendants," and that he was neither informed of what the material was prior to its return nor given the chance to appeal the action taken. (Id. at p. 14).

The GEO defendants argue that a return of documents is not sufficient to warrant constitutional redress, because plaintiff's attorney could have delivered the documents to him personally. They further argue that it is reasonable to expect that plaintiff and his attorney would have communicated as to the material's content. As such, the GEO defendants assert plaintiff's complaints are not specific or egregious enough to amount to a constitutional violation.

As explained above, a violation of a pretrial detainee's due process rights will be found to have been violated, if the restrictions being imposed amount to punishment. Although plaintiff challenges the legality of the return of detainee mail in general and of material sent to him by his attorney in particular, he has not alleged or shown an express intent to punish on the part of the GEO defendants. Indeed, it is not even clear that plaintiff is accusing the GEO defendants of having returned the materials sent by his attorney, as he does not define the term "the Defendants." To that extent, plaintiff's claim here once more fails for lack of a sufficient showing of causation.

Similarly, while there is no indication in the record as to why the alleged policy to return detainee mail without notice or opportunity to appeal the return has been instituted, and thus it is not clear whether an intent to punish can be inferred therefrom, plaintiff has failed to show how application of this policy to NWDC detainees in general violates his constitutional rights. That is, the mere fact that all of the named defendants may have a policy of returning detainee mail in general, does not in itself establish they applied that policy specifically to plaintiff in violation of his constitutional rights.

E. Administrative Segregation

Plaintiff claims defendant Melendez has a policy and practice of allowing defendants McBurney, Sadler and Wigen to punish detainees by placing them in disciplinary and administrative segregation in violation of the law. Specifically, plaintiff claims that on April 7, 2007, he was placed in disciplinary and administrative segregation, even though he was not a danger to himself or to others, which he alleges is contrary to the written policy of the ICE regarding placement in such segregation. Plaintiff claims that he was "tortured" from a lack of sleep while in segregation due to doors banging daily and nightly, and that he became "emotionally distraught" as a result thereof. (Dkt. #5, pp. 14-15). Plaintiff further claims that "the Defendants" knew he would not be able to sleep while in segregation, and that they singled him out for such punishment, even though he did nothing to deserve it. (Id. at p. 15).

The GEO defendants argue that segregation may be a necessary component to maintain discipline

within a detention facility, and that a temporary placement in segregation does not rise to the level of a constitutional violation. Because there is no indication that plaintiff remained in detention for longer than overnight, the GEO defendants assert he has made no valid claim here. It is true that in the prison context mere placement in segregation does not without more necessarily amount to a constitutional violation. A convicted prisoner thus has "a liberty interest under the federal constitution," only "when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

Determining whether an atypical and significant hardship is imposed by disciplinary segregation in that context requires "a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." Jackson, 353 F.3d at 755; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (determination requires case by case, fact by fact consideration). The Supreme Court has found that the presence of the following three factors is indicative of the lack of any liberty interest in avoiding discretionary segregation:

> (1) [whether] disciplinary segregation [is] essentially the same as discretionary forms of segregation; (2) [whether] a comparison between the plaintiff's confinement and conditions in the general population [shows] that the plaintiff [suffers] no "major disruption in his environment"; and (3) [whether] the length of the plaintiff's sentence [is] . . . affected.

Resnick, 213 F.3d at 448 (quoting Sandin, 515 U.S. at 486-87).

The approach taken by the Supreme Court in Sandin to determine whether disciplinary segregation permissibly may be imposed on a convicted prisoner, however, is not applicable to pretrial detainees. See id.; Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir.1996). This is because, "unlike a convicted prisoner, a pretrial detainee may have a liberty interest in not being placed in disciplinary segregation." Id.; Mitchell, 75 F.3d at 524 (pretrial detainees may be subject to disciplinary segregation only with due process hearing to determine whether they have violated any rule). In other words, as with other challenges to conditions of detention based on the Due Process Clause of the Fifth Amendment, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." Mitchell, 75 F.3d at 524 (quoting Bell, 441 U.S. at 535).

Contrary to the GEO defendants' assertion, therefore, the amount of time plaintiff spent placed in

disciplinary segregation is not determinative of whether a due process violation has occurred. Indeed, as the Ninth Circuit has held – without distinction as to the time involved – a pretrial detainee may not be subject to such segregation without a due process hearing to determine whether the detainee committed a rule violation to warrant the action taken. In this case, plaintiff has alleged he was placed in disciplinary segregation in a manner amounting to punishment, even though he did nothing under the written policy of ICE to deserve such placement. To that extent, therefore, plaintiff has made a valid claim, despite the fact that disciplinary segregation may be a necessary tool when appropriately applied.

Plaintiff's due process claim, however, is deficient for other reasons. First, because it is defendant Melendez who plaintiff states is responsible for instituting the policy and practice at issue here, the GEO defendants cannot be held liable for that aspect of plaintiff's claim. In addition, while plaintiff does name defendants McBurney, Sadler and Wigen as detention officials whom defendant Melendez has allowed to place NWDC detainees improperly in disciplinary segregation, he does not specifically state or show that they were the ones who actually placed him in segregation. As such, plaintiff has failed to establish that they caused or personally participated in causing the alleged constitutional violation here.

F. Reading, Copying and Keeping Legal Material

Plaintiff claims defendants McCluskey, Moncevias, Wigen, McBurney, Sadler, Melendez and Bennett routinely read, keep copies of and use for their own purposes "legal material being produced in the Library" against him in violation of his due process rights. (Dkt. #5, p. 15). As discussed above, a restriction placed upon a pretrial detainee will be found to violate that detainee's due process rights if it amounts to punishment. Also as discussed above, the Court first looks to see if there is any indication of an express intent to punish. Plaintiff has not alleged or set forth any facts showing such an intent. Next, the Court must determine whether such intent can be inferred from the nature of the restriction, that is, whether there is an alternative purpose to which the restriction may rationally be connected, and whether the restriction appears excessive in relation to that purpose.

With respect to this second part of the test, the Court finds no clear indication of an alternative purpose to which the GEO defendants' reading, copying and use of NWDC detainee legal work can be said to be connected, let alone whether such a purpose appears excessive. Nevertheless, the Court finds plaintiff's claim here to be deficient as well. Plaintiff has not alleged specifically that the GEO defendants are reading and keeping copies of his own legal materials for use against him. To the extent

that they may be doing so with other detainees' legal work, there is no showing that such actions are wrongful or how such treatment of other detainees' legal work establish that plaintiff's constitutional rights were violated. Indeed, it is not even clear what plaintiff means when he states the GEO defendants use that legal work for their own purposes against him, which, depending on the circumstances, may in fact not implicate any of plaintiff's constitutional rights at all.

G. Denial of Stamps

Plaintiff claims "the Defendants" recently created a policy that he not receive stamps in the mail, even when sent to him by the United States Post Office, which he asserts is unrelated to any legitimate detention-related interest. (Dkt. #5, p. 16). This claim too is deficient. Plaintiff does not define the term "the Defendants." Thus, it is unclear whether he is referring to all of the defendants named in the complaint, solely the GEO defendants, just defendants Melendez and Bennett, or some combination thereof. As such, plaintiff has failed to establish specifically that any of the individually named GEO defendants caused or personally participated in causing the harm alleged.

The GEO defendants argue that the Constitution does not mandate detainee access to postage by mail. They further assert that plaintiff does not complain he cannot get stamps, which they claim are sold at the NWDC's commissary, that if indigent, postage is paid on legal mail, and that the GEO may regulate the receipt of postage stamps without violating an immigration detainee's rights. This last statement lacks any real substance, as clearly those regulations that do not violate any detainee's constitutional rights are, by definition, permissible. In addition, there is no evidence in the record before the Court that stamps are available to detainees, and to plaintiff in particular, at the NWDC's commissary, or that indigent detainees receive free postage for legal or other mail.

To the extent it can be shown the denial of postage has hindered a pretrial detainee's access to the courts, furthermore, a valid constitutional claim may be made. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (prisoners do not have unlimited right to free postage in connection with right of access to courts); Dugar v. Coughlin, 613 F.Supp. 849, 853 (D.C.N.Y. 1985) (right of access to courts includes right to use mail). If, on the other hand, defendants can establish that the restriction on plaintiff's receipt of stamps from the United States Post Office does not amount to punishment pursuant to the due process analysis outlined above, no valid claim will be found to exist. The record before the Court at this time, however, provides an insufficient basis to make this determination.

H. Plaintiff's Americans with Disabilities Act Claim

Plaintiff claims that on numerous occasions he has been unable to "gain numbers from books or read books" in the NWDC's law library, because "the Defendants" have refused to make available for his use a magnifying glass. (Dkt. #5, p. 5). This failure, plaintiff asserts, violates his rights under the ADA. The GEO defendants, without citation to relevant law, assert that access to a magnifying glass does not amount to a disability claim under the ADA. They further assert that if plaintiff cannot see, he should obtain a vision test and request glasses. Finally, the GEO defendants argue plaintiff has failed to set forth any facts that would indicate they have failed to accommodate any reading limitations he has.

Needless to say, it is difficult to assess the validity of the GEO defendants' argument without any citation to legal authority. Nevertheless, the Court finds it need not address the substance of plaintiff's ADA claim at this time, as that claim is deficient for another reason. That is, by using without definition the term "the Defendants," plaintiff once more has failed to show that any of the individually named GEO defendants actually caused or personally participated in causing the harm alleged. As such, as currently claimed, it appears plaintiff cannot establish liability on their part on this basis as well.

IV. Opportunity to Cure

Due to the deficiencies described above, the Court finds plaintiff has failed to state a proper claim against any of the individually named GEO defendants. On that basis, the Court is inclined to recommend granting the GEO defendants motion to dismiss. Before it does so, however, plaintiff shall be given the opportunity to file an amended complaint, curing, if possible, the above noted deficiencies, or show cause explaining why this matter should not be dismissed by **no later than February 13, 2008**.

The amended complaint must carry the same case number as this one. If an amended complaint is not timely filed or if plaintiff fails to adequately address these issues, the Court will recommend dismissal of this action with prejudice for failure to state a claim upon which relief may be granted.

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended), *cert. denied*, 506 U.S. 915 (1992). Thus, if plaintiff chooses to file an amended complaint, the Court will not consider his original complaint.

The Clerk is directed to send plaintiff the appropriate forms so that he may file an amended

complaint. The Clerk is further directed to send a copy of this Order and a copy of the General Order to plaintiff.

DATED this 14th day of January, 2008.

Karen L. Strombom
United States Magistrate Judge