1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAMION BROMFIELD,

                    Plaintiff,

        v.

CHARLES MCBURNEY, *et al.*,

                    Defendants.

Case No.  C07-5226RBL-KLS

REPORT AND
RECOMMENDATION

Noted for August 1, 2008

        This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4.  This matter comes before the Court on the filing of a motion to dismiss plaintiff's amended complaint (Dkt. #17) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) by defendants Charles McBurney, A. Nelson, George Wigen, Doe McClusky, Carl Sadler, and Jose Moncevias, all employees of the Geo Group Inc. (the "GEO defendants") (Dkt. #23).  Having reviewed the GEO defendants' motion, plaintiff's response to that motion, the GEO defendants' reply thereto, and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL BACKGROUND

        Plaintiff currently is a detainee at the Northwest Detention Center ("NWDC"), located in Tacoma,

1   Washington, which is a federal immigration detention facility administered under contract by The GEO

2   Group, Inc.[1]  As noted above, the GEO defendants are all employees of The GEO Group, Inc.  On May 4,

3   2007, plaintiff filed a complaint with the Court suing the GEO defendants, along with Michael Melendez

4   and Jack Bennett, both of whom are employees of the Immigration and Customs Enforcement ("ICE"), a

5   branch of the United States Department of Homeland Security, for violations of his constitutional rights

6   pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 430 U.S. 388 (1971), and for violations of the

7   Americans with Disabilities Act ("ADA"). (Dkt. #1-#5).

8       On August 30, 2007, the GEO defendants filed a motion to dismiss pursuant to Fed. R. Civ. P.

9   12(b)(6), arguing plaintiff had failed to state a claim against any of them. (Dkt. #11).  On January 14,

10  2008, the undersigned issued an order to show cause, noting that while the issue of whether an employee

11  of a private entity which contracts with the federal government may be subject to liability for

12  constitutional violations under Bivens had not been settled, that issue did not have to be decided at the

13  time because the GEO defendants had not argued Bivens did not apply. (Dkt. #13).  The undersigned

14  found, however, that the individual claims in the complaint contained a number of deficiencies, and

15  ordered plaintiff to file an amended complaint curing, if possible, those deficiencies. (Id.).

16      On February 21, 2008, plaintiff filed an amended complaint (Dkt. #17), which the undersigned

17  found did not suffer from the same deficiencies contained in the original complaint, and thus which was

18  accepted for filing (Dkt. #18).  On March 3, 2008, the undersigned issued a report and recommendation

19  (Dkt. #19), which the Court adopted on March 28, 2008 (Dkt. #21), finding plaintiff's original complaint

20  to be moot due the acceptance for filing of plaintiff's amended complaint.  On May 15, 2008, the GEO

21  defendants filed their current, second motion to dismiss plaintiff's amended complaint pursuant to Fed. R.

22  Civ. P. 12(b)(6). (Dkt. #23).  In that motion, the GEO defendants do not challenge the individual claims

23  contained therein, but rather argue that Bivens does not extend to employees of private entities which

24  contract with the federal government, that plaintiff first should be required to, but did not, exhaust

25  administrative remedies before bringing suit against them in federal court, and that plaintiff has

26  alternative state remedies which also preclude application of Bivens in this case.

27      In his response to the GEO defendants' motion, plaintiff argues that this Court should summarily

28  ─────────────────────

[1]See http://www.thegeogroupinc.com/northamerica.asp?fid=105;  http://www.ice.gov/pi/dro/facilities/tacoma.htm.

1   dismiss that motion, because only one motion may be filed by the GEO defendants under Fed. R. Civ. P.

2   12(b).  However, no such restriction is contained in that rule.  Rather, Fed. R. Civ. P. 12(b) merely

3   provides that a motion asserting a defense for failure to state a claim upon which relief can be granted, or

4   any of the other specific defenses set forth therein, "must be made before pleading if a responsive

5   pleading is allowed."  Here, as pointed out by the GEO defendants, the first motion to dismiss concerned

6   plaintiff's original complaint.  As he has now filed a new, amended complaint, the GEO defendants once

7   again are entitled to challenge the validity thereof under Fed. R. Civ. P. 12(b)(6).

8          Plaintiff next argues that in the order to show cause regarding his original complaint, the statement

9   made by the undersigned – that "[t]he Court need not decide this issue [concerning the applicability of

10  <u>Bivens</u>] in this case, however, as the GEO defendants do not argue they are not subject to <u>Bivens</u>

11  liability" (Dkt. #13) – has become the law of this case.  That is, plaintiff asserts in so stating the

12  undersigned has found that such liability does apply here.  Clearly, this is not so.  First, the above

13  statement was only the ruling for that first motion to dismiss.  Second, the undersigned merely assumed

14  <u>Bivens</u> applied for the purpose of reviewing that motion, because the issue had not been raised by the

15  GEO defendants.  That issue now has been raised with respect to plaintiff's new, amended complaint, and

16  therefore it is appropriate for the undersigned to address it.

17                                          DISCUSSION

18  I.      <u>Standard of Review</u>

19         The Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to the

20  complaint.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).  All material factual allegations

21  contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the

22  light most favorable" to the plaintiff.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Lee</u>, 250 F.3d at

23  688.  A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears

24  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

25  relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

26         Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory

27  or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police</u>

28  <u>Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).  Vague and mere "[c]onclusionary allegations, unsupported by

1   facts" are not sufficient to state a claim under 42 U.S.C. § 1983. <u>Jones v. Community Development</u>

2   <u>Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984); <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992).  Thus,

3   even though the Court is to construe the complaint liberally, such construction "may not supply essential

4   elements of the claim that were not initially pled." <u>Pena</u>, 976 F.2d at 471.

5   II.    *Bivens*

6        In <u>Bivens</u>, the Supreme Court "recognized for the first time an implied private action for damages

7   against federal officers alleged to have violated a citizen's constitutional rights." <u>Correctional Services</u>

8   <u>Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001).  Specifically, the Supreme Court held that "a victim of a

9   Fourth Amendment violation by federal officers may bring suit for money damages against the officers in

10  federal court," even though Congress had never provided for such right of action and the Fourth

11  Amendment did "not in so many words provide for its enforcement by award of money damages for the

12  consequences of its violation." <u>Id.</u> at 66-67 (quoting <u>Bivens</u> at 396).  The Supreme Court "found an

13  implied damages remedy," however, by "relying largely on earlier decisions implying private damages

14  actions into federal statutes," and by "finding 'no special factors counseling hesitation in the absence of

15  affirmative action by Congress.'" <u>Id.</u> (quoting <u>Bivens</u> at 395-97).

16        Since its decision in <u>Bivens</u>, though, the Supreme Court has "responded cautiously to suggestions

17  that *Bivens* remedies be extended into new contexts." <u>Malesko</u>, 534 U.S. at 68 (quoting <u>Schweiker v.</u>

18  <u>Chilicky</u>, 487 U.S. 412, 421 (1988)).  Indeed, such caution is prudent, since "[a] *Bivens* cause of action is

19  implied without any express congressional authority whatsoever." <u>Holly v. Scott</u>, 434 F.3d 287, 289 (4th

20  Cir. 2006).  As such, "a decision to create a private right of action is one better left to legislative judgment

21  in the great majority of cases." <u>Id.</u> at 289 (quoting <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 727 (2004)

22  (noting, accordingly, that Supreme Court has on multiple occasions declined to extend <u>Bivens</u> for reason

23  that Congress is in better position to decide whether or not public interest would be served by creation of

24  new substantive legal liability); <u>see also</u> <u>Schweiker</u>, 487 U.S. at 426-27; <u>Bush v. Lucas</u>, 462 U.S. 367, 390

25  (1983).  This is because:

26        Congress possesses a variety of structural advantages that render it better suited for
          remedial determinations in cases such as this. Unconstrained by the factual
27        circumstances in a particular case or controversy, Congress has a greater ability to
          evaluate the broader ramifications of a remedial scheme by holding hearings and
28        soliciting the views of all interested parties. . . . And by debating policies and passing
          statutes rather than deciding individual cases, Congress has increased latitude to

REPORT AND RECOMMENDATION
Page - 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

implement potential safeguards-e.g., procedural protections or limits on liability-that may not be at issue in a particular dispute.

Holly, 434 F.3d at 290 (citing Bush, 462 U.S. at 389).

Given the Supreme Court's cautionary stance toward extended the application of Bivens, and its recognition that often it is Congress which is in a better position to create a new substantive legal liability, "[t]he determination of whether or not to imply a *Bivens* remedy turns on whether there are special factors counseling hesitation absent an affirmative action by Congress, explicit statutory prohibitions against the relief sought, and/or exclusive statutory alternatives." Lacedra v. Donald W. Wyatt Detention Facility, 334 F.Supp.2d 114, 138 (D.R.I. 2004) (existing remedies and extent to which Congress or courts have found *Bivens* remedy should be unavailable must be carefully assessed and considered); see also Sarro v. Cornell Corrections, Inc., 248 F.Supp.2d 52, 57 (D.R.I. 2003) (Bivens actions generally have been allowed only in cases where there is no indication of contrary Congressional intent and there are no special factors counseling hesitation). Factors that the Supreme Court has found to "counsel hesitation" by the courts in extending Bivens include: "conflict with federal fiscal policy; the existence of a comprehensive remedial scheme providing meaningful remedies created by Congress; and the unique structure and nature of the military." Sarro, 248 F.Supp.2d at 57.

Since Bivens, the Supreme Court thus has recognized the existence of an implied damages remedy in only two other circumstances. In Davis v. Passman, 442 U.S. 228 (1979), the Supreme Court "inferred a new right of action chiefly because the plaintiff lacked any other remedy for the alleged constitutional deprivation." Malesko, 534 U.S. at 67; Davis, 442 U.S. at 245 ("For Davis, as for Bivens, 'it is damages or nothing.'"). In Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court "inferred a right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act (FTCA) claim against the United States," reasoning that "the threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals." Malesko, 534 U.S. at 67-68; Carlson, 446 U.S. at 18-23 (*Bivens* remedy more effective because it is recoverable against individuals).

Since Davis and Carlson, however, the Supreme Court consistently has declined to extend Bivens liability "to new contexts or new categories of defendants." Malesko, 534 U.S. at 68. For example, in Bush, the Supreme Court refused to create an implied Bivens remedy against government officials for a First Amendment violation in the federal employment context, holding that the "administrative review

1  mechanisms crafted by Congress provided meaningful redress," foreclosing "the need to fashion a new,

2  judicially crafted cause of action." Id. (recognizing in Bush Congress' institutional competence in crafting

3  appropriate relief as special factor counseling hesitation); Bush, 462 U.S. 378 n.14, 380, 386-88; see also

4  Chappell v. Wallace, 462 U.S. 296 (1983) (reaching similar result in military context).

5      In FDIC v. Meyer, 510 U.S. 471 (1994), the Supreme Court "unanimously declined an invitation

6  to extend *Bivens* to permit suit against a federal agency," emphasizing that "'the purpose of *Bivens* is to

7  deter *the officer*,' not the agency." Malesko, 534 U.S. at 69 (quoting Meyer, 510 U.S. at 485) (emphasis in

8  original).  Employing the same reasoning it used in Meyer, the Supreme Court in Malesko also declined

9  to extend Bivens liability to a private corporation which had contracted with the federal Bureau of Prisons

10 to operate a community correctional facility housing federal inmates. Id. at 63, 70-74.  The Supreme

11 Court, however, has yet to address the specific issue of whether individual employees of a private

12 corporation are themselves subject to Bivens liability. See Malesko, 534 U.S. at 65 (noting both parties

13 agreed question of whether Bivens action might lie against private individual was not presented).[2]

14     Given the above, it becomes clear that certain elements must be met before a party will be entitled

15 to a Bivens remedy.  First, Congress must not have "already provided an exclusive statutory remedy" for

16 the harm alleged. Holly, 434 F.3d at 290.  There also must be "no explicit congressional declaration that

17 money damages not be awarded." Id.  In addition, there must be "no special factors counseling hesitation

18 in the absence of affirmative action by Congress." Id.  "Congress' silence" on the availability of remedies

19 for plaintiffs can satisfy the first two elements. Id.  The existence of "an adequate remedy," including one

20 which may be available under state law, for the alleged injuries, however, constitutes a "special factor"

21 counseling hesitation. Id.  So too may an individual defendant's "private" as opposed to "government"

22 status counsel hesitation against extending Bivens liability. Id.

23     Indeed, the Supreme Court's decision in Malesko expressly provides that for a Bivens remedy to

24 be available, the defendant both must be an individual acting under federal governmental authority and

26  [2]The Ninth Circuit also has not yet been directly presented with this issue, although it has indicated in the context of
27  reviewing a denial of appointment of counsel, that Bivens may be the proper vehicle for seeking recovery against employees of a
private corporation under contract with the federal government to operate a prison facility. See Agyeman v. Corrections Corporation
28  of America, 390 F.3d 1101, 1104 (2004) ("[T]o the extent that Agyeman sought recovery from individual employees of the
Corrections Corporation, the case had to [be] brought as a *Bivens* action . . . a lawyer attentive to differences would have noticed
that Agyeman should have sued the employees under *Bivens*.").

REPORT AND RECOMMENDATION
Page - 6

the plaintiff must have no other alternative remedy for the harm alleged:

> In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct. Where such circumstances are not present, we have consistently rejected invitations to extend *Bivens* . . .

Malesko, 534 U.S. at 70 (emphasis in original).  In other words, both of the above factors  – an individual federal actor against whom there exists no previous cause of action and a lack of any available alternative remedy – must be present, and the absence of either prohibits the application of Bivens. See Holly, 434 F.3d at 296 ("'[W]here [these two] circumstances are not present,' the Court has 'consistently rejected invitations' to enlarge the scope of the judicially created *Bivens* remedy.") (quoting Malesko, 534 U.S. at 70).  Thus, for plaintiff to be entitled to a remedy under Bivens, the Court must determine whether (1) as employees of the GEO Group, Inc., the GEO defendants' actions were "of a sufficiently federal character to create constitutional liability," and (2) plaintiff lacks an adequate alternative remedy against the GEO defendants therefor, either under state law or otherwise. Holly, 4343 F.3d at 292.

    A.      Acting Under Color of Federal Law

The first question to decide here then is whether the GEO defendants are to be treated as individual federal officers against whom plaintiff previously lacks a cause of action.  As noted above, neither the Supreme Court expressly nor the Ninth Circuit have been presented with the issue of whether Bivens applies to employees of private corporations.  Further, it does not appear that any federal statute expressly provides for or implies a private cause of action in this context, and the GEO defendants have not shown any intent on the part of Congress to make such available.  Thus, it seems Congress has been silent on this issue as well.  Any extension of Bivens in this case, therefore, would provide plaintiff with "an otherwise nonexistent cause of action." Malesko, 534 U.S. at 70.  The undersigned, accordingly, must determine whether the actions of the GEO defendants can be viewed as those of federal officers, that is, as actions which are sufficiently attributable to federal actors.  The undersigned finds that they are.

In Holly, as in this case, the defendants were employees of The GEO Group, Inc., which the Fourth Circuit noted none of the parties there, as here, had contested was "a wholly private corporation in which the federal government has no stake other than a contractual relationship." 434 F.3d at 291. Declining to impute any liability under such a circumstance, the Court of Appeals stated that

1  "[a]pplication of *Bivens* to private individuals simply does not find legislative sanction." Id. at 291-92.

2  The Fourth Circuit went on to explain its holding as follows:

3       The alleged actions of these defendants were not of a sufficiently federal character to
         create constitutional liability. Defendants are not federal officials, federal employees, or
4        even independent contractors in the service of the federal government. Instead, they are
         employed by [The] GEO [Group, Inc.], a private corporation. There is no suggestion
5        that the federal government has any stake, financial or otherwise, in [The] GEO
         [Group, Inc.]. . . . Nor is there any suggestion that federal policy played a part in
6        defendants' alleged failure to provide adequate medical care, or that defendants
         colluded with federal officials in making the relevant decisions. . . . To be sure, [The]
7        GEO [Group, Inc.], like a great many private corporations, does business under contract
         with the government. But this is not by itself enough to subject it to constitutional
8        liability, . . . let alone to create such liability for its individual private employees.

9  Id. at 292-93 (internal citations omitted).

10         In Lacedra, the district court also held that a cause of action could not be brought against private

11  individuals under Bivens.  Relying for support on the Supreme Court's holding in Bivens – that a "federal

12  agent acting under color of his authority gives rise to a cause of action for damages consequent upon his

13  unconstitutional conduct" – the district court held in Lacedra that to be liable under Bivens, the

14  defendants must be both "federal officials" and also "act under color of federal law." Lacedra, 334

15  F.Supp.2d at 141 (citing Bivens, 403 U.S. at 389).  However, since the defendants in Lacedra were

16  employees of a private corporation, and therefore only "private actors," the district court determined that

17  an analysis of whether they had acted under color of federal law was unnecessary. Id.  That is, the fact

18  that the defendants were not actual federal officials itself precluded application of Bivens.

19         In the Ninth Circuit, however, "the private status of the defendant will not serve to defeat a *Bivens*

20  claim, provided that the defendant engaged in federal action." Schowengerdt v. General Dynamics Corp.,

21  823 F.2d 1328, 1337-38 (9th Cir. 1987) (private status is not alone sufficient to counsel hesitation in

22  implying damages remedy when private party defendants jointly participate with government to sufficient

23  extent to be characterized as federal actors).  That is, Bivens liability may be applicable to constitutional

24  violations committed by private individuals, but only if they act "under color of federal law," or, in other

25  words, only if they are "federal actors." Sarro, 248 F.Supp.2d at 59.  The undersigned therefore declines

26  to adopt the reasoning of the courts in Holly and Lacedra regarding the federal character of the GEO

27  defendants in this case.  Rather, in light of the Ninth Circuit's holding in Schowengerdt, the reasoning of

28  the district court in Sarro is more persuasive. See also Bender v. General Services Administration, 539

1   F.Supp.2d 702, 707-08 (S.D.N.Y. 2008).

2          In determining whether a party acts under color of federal law, courts should "look to the more

3   established body of law that defines the analogous term -- under color of state law -- with regard to

4   actions under 42 U.S.C. § 1983." <u>Bender</u>, 539 F.Supp.2d at 707; <u>see also</u> <u>Chin v. Bowen</u>, 833 F.2d 21, 24

5   (2nd Cir. 1987) (concepts of state action under section 1983 apply in determining whether action was

6   taken under color of federal law for <u>Bivens</u> purposes); <u>Sarro</u>, 248 F.Supp.2d at 59 (tests for determining

7   whether private party acts under color of federal law are similar to tests for determining whether private

8   party acts under color of state law).  "[A] defendant acts 'under color of' state law where he exercises

9   power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

10  authority of state law.'" <u>Bender</u>, 539 F.Supp.2d at 707 (quoting <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988)).

11         Private parties, therefore, "can possess such power when they act in concert with the government."

12  <u>Id.</u> ("To act 'under color' of law does not require that the accused be an officer of the State.  It is enough

13  that he is a willful participant in joint activity with the State or its agents.'") (quoting <u>United States v.</u>

14  <u>Price</u>, 383 U.S. 787, 794 (1966)).  Accordingly, while the GEO defendants here may not be federal

15  officials, they "have acted under color of federal law if they have exercised power they have by virtue of

16  federal law, or have jointly acted with the federal government or its agents." <u>Id.</u> at 708.

17         In <u>Bender</u>, the district court found the plaintiff had sufficiently alleged the defendants were acting

18  under color of federal law.  For example, the defendants "were contractual participants in the provision"

19  of services for a federal government agency, and they were "clothed with apparent governmental

20  authority because of their role as providers" of those services to that agency – a role the district court

21  further noted they performed "for the benefit of the federal government," and for which they were

22  "compensated from the federal budget." <u>Id.</u>  Similarly, here, the GEO defendants are employees of a

23  private entity that has contracted with the federal government to operate the Northwest Detention Center,

24  a federal immigration detention facility.  In their role as providers of that service, the GEO defendants

25  were clothed with the apparent governmental authority to operate and maintain that facility – and,

26  accordingly, all of the detainees, including plaintiff, held therein – which clearly is being done for the

27  benefit of the federal government, and surely for which they, as employees, and The GEO Group, Inc. are

28  being compensated.

The approach taken by the district court in <u>Bender</u> for determining whether the defendants in that case were acting under color of federal law, is just one of the tests employed for determining whether a private party has acted under color of state law.  A good description of those tests and their application has been set forth by the district court in <u>Sarro</u>:

> These tests include the "direct links" test, . . . (a direct link between private corporation and federal government establishes that corporation acted under color of federal law); the public function test, . . . (a private party performing a function traditionally the exclusive prerogative of the government is a government actor); the nexus test, . . . (a private party is a state actor when there is a sufficiently close nexus between the government and the challenged action of the private party that the action of the private party is fairly treated as that of the government itself); and the symbiotic relationship test, . . . (a private party is a state actor when the government has so far insinuated itself into a position of interdependence with that party that the government must be recognized as a joint participant in the challenged activity).
>
> . . .
>
> . . . these tests do not purport to exhaust the field of circumstances under which a private individual may be considered a federal actor by establishing a finite number of rigidly circumscribed pigeon holes within which particular conduct of a particular individual must precisely fit. Rather, the tests merely identify the factors that courts have applied in different contexts. . . . Because some of the factors are very similar, the tests may overlap.

248 F.Supp.2d at 59 (internal citations omitted).

In <u>Sarro</u>, the district court employed the "public function" test to find the defendants – employees of a privately-operated facility housing federal prisoners awaiting trial – exercised "powers traditionally exclusively reserved to the government," and thus were government actors. <u>Id.</u> at 60 (quoting <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 351 (1974)).  In <u>Holly</u>, the Fourth Circuit arrived at a different conclusion, finding that "correctional functions" had "never been exclusively public," because "private operation of jails and prisons existed in the United States" as far back as "the eighteenth and nineteenth centuries." 434 F.3d at 293 (quoting <u>Richardson v. McKnight</u>, 521 U.S. 399, 405 (1997).  Thus, the Court of Appeals held that "the operations of prisons is not a 'public function.'" <u>Id.</u>

The undersigned finds, however, the approach taken by the district court in <u>Sarro</u> on this issue to be more persuasive.  Thus, "an activity may satisfy the public function test if it is performed under the aegis of governmental authority." <u>Sarro</u>, 248 F.Supp.2d at 60 (citing <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614 (1991)).  "Even if the function must be one that traditionally has been exclusively performed by the government," furthermore, "the incarceration of individuals accused of committing

1   crimes is such a function." Id.  Accordingly, "the fact that the function of detaining individuals charged

2   with crimes, sometimes, has been delegated to and performed by private parties does not prevent the

3   function, itself, from being an exclusively governmental function." Id.  The Sarro court went on to explain

4   its decision in further detail as follows:

5           Clearly, the detention of individuals charged with committing crimes is an exclusively
        governmental function. Only the government has the authority to imprison a person and
6       the exclusive governmental nature of that function is not altered by the fact that,
        occasionally, the government may contract to have criminal defendants incarcerated at
7       privately-operated institutions.

8           Here, Sarro and the other individuals incarcerated at Wyatt had been arrested by federal
        law enforcement agents and charged with federal crimes. They were being detained
9       under authority of the United States government pending disposition of the charges
        against them. By law, they were in the custody of the United States Marshal who
10      exercised ultimate authority over them. . . . The power to detain them was derived
        solely and exclusively from federal authority and the defendants, in effect, acted as the
11      Marshal's alter ego. The fact that the Marshal temporarily delegated the task of
        detaining those prisoners to the defendants did not convert that detention into anything
12      other than an exclusively governmental function. . . . ("The function of incarcerating
        people, whether done publically or privately, is the exclusive prerogative of the state.
13      This is a truly unique function and has been traditionally and exclusively reserved to
        the state.").

14  Id. at 61 (internal citations omitted).[3]

15          The detention of individuals who have been charged with immigration violations or are being held

16  pending the resolution of other immigration-related matters, would appear to be even more clearly an

17  exclusively governmental function.  Indeed, it seems to be a function exclusive to the federal government,

18  as no showing has been made that the states have the power to exercise such authority.  Nor has it been

19  shown that the federal government historically has contracted with private corporations or other entities to

20  administer the detention of immigrants, even if that were a valid basis for finding an absence of exclusive

21

22          [3]This explanation of the particular governmental "function" that is at issue in the public function test is more logical, and
23  thus more persuasive, than the Fourth Circuit's much narrower view thereof:

24          Holly . . . urges that the "function" to which we should look is not the administration of a prison, but rather
        the power to keep prisoners under lock and key.  This argument misapprehends the proper nature of our
25      inquiry.  In determining the presence of state action, we are not to conduct a far-flung investigation into all
        of a defendant's possible activities, but rather must focus on "'the specific conduct of which the plaintiff
26      complains.'"

27  Holly, 434 F.2d at 293 (finding that provision of medical care to prison inmate at private prison arose out of defendants' operation
    of prison and not out of fact of inmate's incarceration, and therefore did not constitute public function) (citations omitted).  In
28  addition, the undersigned finds that no "far-flung investigation" into the GEO defendants' activities is needed here, as it is quite
    clear that the particular governmental function at issue in this case is, as explained in further detail below, the detention of
    individuals charged with immigration violations or pending other immigration-related matters.

1  governmental authority in this area.  That is, as found by the district court in <u>Sarro</u>, because the power to

2  detain immigrants is derived solely and exclusively from federal authority, the GEO defendants, in effect,

3  acted as the government's alter ego in detaining plaintiff, and the fact that the task of detaining plaintiff

4  and other immigrants was temporarily delegated to the GEO defendants does not convert that detention

5  into anything other than an exclusively governmental function.[4]

6         B.       <u>Lack of Alternative Remedies</u>

7         As discussed above, for <u>Bivens</u> to apply, plaintiff also must lack an adequate alternative remedy

8  against the GEO defendants for the harms alleged.  Also as discussed above, the Supreme Court's

9  decision in <u>Malesko</u> makes clear that to the extent state law may provide such a remedy, no cause of

10  action will be imposed under <u>Bivens</u>.  This is true even if no other relief has been provided for under

11  federal law.  See <u>Malesko</u>, 534 U.S. at 69 ("The absence of statutory relief for a constitutional violation . .

12  . does not by any means necessarily imply that courts should award money damages against the officers

13  responsible for the violation.") (quoting <u>Schweiker</u>, 487 U.S. at 421-22).  Accordingly, the Supreme

14  Court has rejected the assertion that a <u>Bivens</u> remedy should be implied "simply for want of any other

15  means for challenging a constitutional deprivation in federal court," and, thus, it does "not matter . . . that

16  ──────────────────

17       [4]<u>See</u> <u>U.S. v. Thomas</u>, 240 F.3d 445 (5th Cir. 2001), which found a guard at a privately-operated detention center under
   contract with the United States Immigration and Naturalization Service ("INS") to be a "public official" for purposes of the Federal
18  Bribery Statute, 18 U.S.C. § 201(a)(1), (b)(2):

19         Thomas was a "public official", as defined by § 201(a)(1).  As a corrections officer for CCA [Corrections
           Corporation of America], which contracted with the INS to house federal detainees, Thomas performed the
20         same duties, and had the same responsibilities, as a federal corrections officer employed at a federal prison
           facility.  Although he did not have any authority to allocate federal resources, . . . Thomas nevertheless
21         occupied a position of public trust with official federal responsibilities, because he acted on behalf of the
           United States under the authority of a federal agency which had contracted with his employer. . . . Pursuant
22         to CCA's contract with the INS, CCA correctional officers had to abide by federal regulations; the rules and
           regulations regarding the standards of conduct for CCA correctional officers, including not bringing
23         contraband into the prison, were subject to INS approval; and any employee who violated those standards
           could be dismissed by either CCA or the INS.

24  <u>Id.</u> at 448.  The GEO defendants have made no showing that they are not in a similar position with respect to the Department of
   Homeland Security and The GEO Group, Inc.'s contract with the federal government.
25         The GEO defendants argue, however, that no court actually has extended <u>Bivens</u> to imply a cause of action against
   employees of a private entity under contract with the federal government to operate an immigration detention facility, and therefore
26  that should it do so, this Court would be the first.  The GEO defendants, though, are incorrect.  In <u>Jama vs. United States</u>
   <u>Immigration and Naturalization Service</u>, 343 F.Supp.2d 338 (D.N.J. 2004), the district court for the District of New Jersey did find
27  – albeit on somewhat different grounds – that a <u>Bivens</u> action could be brought against a private corporation's employees who
   worked as guards at an immigration detention facility maintained by their employer under a contract with the INS.  <u>Id.</u> at 363.
28  Regardless, even if this Court were the first to imply a cause of action in this context, in light of the above discussion, that fact alone
   would not be a sufficient reason to decline to extend <u>Bivens</u>.

'[t]he creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed.'" Id. (quoting Schweiker, 487 U.S. at 425).

"[I]t is irrelevant," therefore, "to a special factors analysis whether the laws currently on the books afford" the plaintiff "'an adequate federal remedy for his injuries." Id. (quoting United States v. Stanley, 483 U.S. 669, 683 (1987)). So long as the plaintiff has "an avenue for some redress," the Supreme Court thus has stated, "bedrock principles of separation of powers" will foreclose "judicial imposition of a new substantive liability" under Bivens. Id. (citing Schweiker, 487 U.S. at 425-27). In other words, a Bivens cause of action will be implied only for a plaintiff who lacks "*any alternative remedy* for harms caused" by a defendant officer's unconstitutional conduct. Id. at 70 (emphasis in original). Thus, the undersigned agrees with the Tenth Circuit that such will not be implied unless "there exists an alternative cause of action arising under either state or federal law . . . for the harm created by the constitutional deprivation." Peoples v. CCA Detention Centers, 422 F.3d 1090, 1103 (10th Cir. 2005).

In Malesko, the Supreme Court found no lack of an effective remedy, pointing out it was conceded in that case that alternative remedies available to the plaintiff were "at least as great, and in many respects greater, than anything that could be had under *Bivens*." 534 U.S. at 72. The plaintiff in Malesko, an inmate in a privately-run facility housing federal inmates, alleged the defendants acted negligently toward him, resulting in physical injury. Id. at 64-65. The Supreme Court, however, noted that "federal prisoners in private facilities enjoy a parallel tort remedy" unavailable to prisoners in publicly-run facilities. Id. at 72-73. The Supreme Court further noted as follows:

> Inmates in respondent's position also have full access to remedial mechanisms established by the [federal] BOP [Bureau of Prisons], including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP). . . . This program provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring. And unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.

Id. at 74 (internal citation omitted). Thus, to the extent a plaintiff may seek a remedy in tort, through an administrative grievance process or by seeking injunctive relief in federal court, liability will not attach under a Bivens implied cause of action. See, e.g., Peoples, 422 F.3d at 1102 (noting Supreme Court has often focused on availability of alternative administrative procedures to provide, meaningful, although not

1    necessarily complete, redress for constitutional violations).

2         Several courts have found that where state law provides an effective remedy to the harm alleged,

3    an implied cause of action under Bivens will not be had. See Holly, 434 F.3d at 296 (suit for negligence,

4    medical negligence and cruel and unusual punishment available under state law for claims by prisoner in

5    private federal prison for harm caused by inadequate medical care); see also Alba v. Montford, 517 F.3d

6    1249, 1254 (11th Cir. 2008) (rejecting plaintiff's claim that alternative remedy must be federal remedy)

7    (citing Holly, 434 F.3d at 296); Peoples, 422 F.3d at 1100-03 (finding alternative state law cause of action

8    for damages eliminates application of Bivens).  Given the Supreme Court's language in Malesko that no

9    cause of action under Bivens will be implied unless the plaintiff lacks "*any alternative remedy* for harms"

10   alleged, the undersigned agrees that state, as well as federal, remedies must be unavailable.

11        The undersigned, therefore, disagrees with the approach taken by the district court in Sarro, which

12   read Malesko as indicating that while the existence of state law remedies may be a factor to be considered

13   in determining whether to apply Bivens, they "cannot be construed as a manifestation of Congressional

14   intent to preclude the application" thereof. 248 F.Supp.2d at 63.  In so finding, the Sarro court emphasized

15   that making a Bivens implied cause of action "contingent upon whether there are adequate alternative

16   state law remedies would require a case-by-case analysis of state law." Id. (citing Bivens, 403 U.S. at

17   389). Such analysis, the Sarro court continued, would cause the availability of Bivens actions to vary

18   based on the state in which the plaintiff was located, something the Supreme Court had sought to avoid in

19   Bivens. Id. (citing Bivens, 403 U.S. at 389).  The district court in Sarro further relied on what it viewed as

20   the Supreme Court's desire in Malesko "to maintain parity between the remedies afforded to prisoners at

21   privately-operated facilities and those at government-operated facilities." Id. (noting that refusing to apply

22   Bivens to inmates at privately-operated facilities for whom state law remedies are available would deprive

23   them of remedy available to those at government-operated facilities).

24        This approach, however, ignores the express language of Malesko that for Bivens liability to

25   apply, the plaintiff must lack "*any alternative remedy* for [the] harms caused," and that "it is irrelevant to

26   a special factors analysis whether the laws currently on the books afford" him "'an adequate federal

27   remedy for his injuries." 534 U.S. at 69 (quoting Stanley, 483 U.S. at 683).  Again, this indicates that the

28   Supreme Court will not extend Bivens unless there is no alternative remedy available for the harm

1  alleged, though that remedy may not leave the plaintiff fully compensated for the constitutional violation.

2  The Supreme Court, furthermore, gave no indication that it was considering only the availability of

3  federal remedies in so holding, and, indeed, appears to have rejected that limitation. See id. at 73 (finding

4  plaintiff's situation in Malesko to be altogether different from Bivens, in which it found alternative state

5  tort remedies to be inconsistent or even hostile to remedy inferred from Fourteenth Amendment).

6        In addition, while the Supreme Court in Malesko did discuss the issue of parity, it only did so for

7  the purpose of stating that it was not going to allow prisoners in private prison facilities to bring an action

8  against the individual officer's employer, whereas those in a BOP facility did not enjoy that same right.

9  Id. at 71-72 ("Whether it makes sense to impose asymmetrical liability costs on private prison facilities

10  alone is a question for Congress, not us, to decide.").  That is, the Supreme Court in Malesko was not so

11  much concerned with ensuring that prisoners in private and public prison facilities are treated the same.

12  Rather, it was not going to extend Bivens into a new area, where those in a similar position did not

13  already enjoy that right, without some indication of Congressional intent to do so.[5]  In any event, given

14  the language in Malesko indicating that Bivens will not apply if there exists a state law remedy – even

15  though that remedy may not make the plaintiff whole – a lack of complete parity is not decisive.

16        The undersigned similarly disagrees with the district court's analysis in Bender, which also read

17  Malesko as not requiring an absence of all remedies, including those provided by state law, before finding

18  an implied cause of action under Bivens.  In Bender, the district court stated that it was not the complete

19  absence of remedy the Supreme Court found important, but instead the absence of a remedy "for harms

20  caused by an individual officer's *unconstitutional conduct*." 539 F.Supp.2d at 710 (quoting Malesko, 534

21  U.S. at 70) (emphasis added by district court).  In other words, according to the Bender court, the

22  Supreme Court did not conclude that the plaintiff in Bivens "was completely without other remedies," but

23  rather that a violation of his constitutional rights caused "a different harm than the commission of a state

24  ───────────────

25        [5]As stated by the Tenth Circuit in Peoples:

26        . . . There is no doubt that our holding [that the existence of an alternative state law remedy precludes the
        creation of an implied cause of action] renders federally employed guards subject to a *Bivens* claim while
27        privately employed guards might not.  This asymmetry, however, existed prior to today's holding; it was not
        created by this decision.  An implied right, by definition, is created by the courts and therefore cannot exist
28        until it is judicially created.

422 F.3d at 1103.

1   law tort," and, thus, was "the basis of a different cause of action." Id.  That is, because a federal

2   constitutional tort claim is "substantially different in kind" from a state law tort claim, the existence of the

3   latter does not preclude the Court from implying a private cause of action under Bivens. Id. (citation

4   omitted).

5           As explained in Malesko, however, the issue in Bivens was not that state law lacked a remedy for

6   the particular unconstitutional conduct, but that, given the nature and extent of the authority exercised by

7   the federal officers who confronted the plaintiff, those remedies that otherwise would have been available

8   to plaintiff were foreclosed:

9           . . . [R]espondent's complaint in the District Court arguably alleged no more than a
        quintessential claim of negligence. It maintained that named and unnamed defendants
10      were " *negligent* in failing to obtain requisite medication ... and were further negligent
        by refusing ... use of the elevator." . . . It further maintained that respondent suffered
11      injuries "[a]s a result of the *negligence* of the Defendants." . . . The District Court,
        however, construed the complaint as raising a *Bivens* claim, presumably under the
12      Cruel and Unusual Punishments Clause of the Eighth Amendment. Respondent
        accepted this theory of liability, and he has never sought relief on any other ground.
13      This is somewhat ironic, because the heightened "deliberate indifference" standard of
        Eighth Amendment liability, . . . would make it considerably more difficult for
14      respondent to prevail than on a theory of ordinary negligence . . .

15
        This also makes respondent's situation altogether different from *Bivens*, in which we
16      found alternative state tort remedies to be "inconsistent or even hostile" to a remedy
        inferred from the Fourth Amendment. . . . When a federal officer appears at the door
17      and requests entry, one cannot always be expected to resist. . . . ("[A] claim of authority
        to enter is likely to unlock the door"). Yet lack of resistance alone might foreclose a
18      cause of action in trespass or privacy. . . . Therefore, we reasoned in *Bivens* that other
        than an implied constitutional tort remedy, "there remain[ed] ... but the alternative of
19      resistance, which may amount to a crime." . . . Such logic does not apply to respondent,
        whose claim of negligence or deliberate indifference requires no resistance to official
20      action, and whose lack of alternative tort remedies was due solely to strategic choice.

21   Malesko, 534 U.S. at 73-74 (internal citations omitted).  Thus, unlike in Bivens, the plaintiff in Malesko,

22   because he could resort to an alternative remedy in tort, no private cause of action needed to be implied.

23   In Bivens, on the other hand, an implied cause of action was required, not because state law provided no

24   remedy for the particular constitutional tort being alleged, but because the plaintiff had been placed in the

25   untenable position of either committing a potential crime or losing his state claim.  That is, effectively the

26   plaintiff had no alternative remedy other than an implied constitutional tort.

27   III.    Plaintiff's Individual Claims

28           As noted above, plaintiff has alleged a number of constitutional violations were committed against

him by the GEO defendants.  The amended complaint sets forth the following specific claims: (1) denial of access to state laws and forms and federal civil rights/*habeas corpus* case law in violation of his right to access the courts; (2) opening of special out-going legal correspondence in violation of his constitutional rights; (3) opening of his legal mail in violation of his right to freedom of expression; (4) return of his outgoing mail in violation of his First Amendment rights; (5) placement in administrative segregation in conditions amounting to a violation of his Eighth Amendment rights; (6) placement in segregation for the purpose of punishing him in violation of his due process rights; and (7) reading and copying his legal documents in violation of his right to access the courts. (Dkt. #17 and #18).

As discussed above, the GEO defendants properly are considered to be federal actors for purposes of this case.  That is, they are acting under color of federal law.  Since, also as discussed above, there exists no prior cause of action for the constitutional violations alleged by plaintiff here, the first requirement set forth by the Supreme Court in Malesko has been met.  The next step in applying the above analysis, therefore, is to determine whether any alternative remedies exist for the each of the specific claims plaintiff raises.  The undersigned finds that while plaintiff has an alternative remedy for claims (5) and (6) – namely, he may file a negligence action in state court for the GEO defendants' tortious conduct – the GEO defendants have not shown any are available for the other five claims.

The GEO defendants argue that this Court does not need to extend Bivens liability in this case in order to protect plaintiff's rights.  Rather, they assert a state court claim for negligence is sufficient to do so here.  However, no showing has been made by the GEO defendants that plaintiff can bring an ordinary negligence claim against them strictly for violations of his constitutional rights, as opposed to actual injury to his person or property. See Huff v. Roach, 125 Wn.App. 724, 729 (2005) ("The elements of negligence are duty, breach, causation, and *injury*.") (citing Keller v. City of Spokane, 146 Wn.2d 237, 242 (2002)) (emphasis added by court of appeals).  For example, although plaintiff claims his constitutional rights were violated by the GEO defendants' opening of his mail and handling of his legal materials, he alleges no specific physical or monetary injury resulting therefrom.  Accordingly, the GEO defendants fail to show how plaintiff would be remedied for the constitutional violations attributed to them in this instance by seeking a tort remedy in state court.

On the other hand, plaintiff does allege that he has suffered both mentally and physically due to

his being placed in segregation by defendants in claims (5) and (6).  See (Dkt. #17, pp. 33-46).
Accordingly, plaintiff would be able to bring an action for negligence in state court and seek to recover
damages under a tort remedy for the harm he alleges to have suffered therefrom.  Indeed, most, if not all,
of the courts that have found the existence of a state court negligent tort action constitutes an alternative
remedy precluding the application of Bivens, have done so in the context of allegations of actual physical
harm to the inmate or detainee while incarcerated.  See, e.g., Malesko, 534 U.S. at 61 (suffered heart
attack and fell because of refusal to allow use of elevator); Alba, 517 F.3d at 1251 (refusal to give post-
operative treatment required to repair damage to vocal cords resulting from surgery); Holly, 434 F.3d at
288 (blackouts resulting from refusal to provide sufficient insulin dosage to diabetic); Peoples, 422 F.3d
at 1093-94 (failure to protect resulting in physical attack by other inmates).

The GEO defendants next argue plaintiff could bring a claim against The GEO Group, Inc. under
the theory of *respondeat superior*.  "[T]he doctrine of respondeat superior, imposes liability on an
employer for the torts of an employee who is acting on the employer's behalf." Niece v. Elmview Group
Home, 131 Wn.2d 39, 48 (1997); Dickinson v. Edwards, 105 Wn.2d 457, 466 ("[D]octrine of respondeat
superior provides, generally, that the master is liable for the acts of his servant committed within the
scope or course of his employment.") (citation omitted).  However, for the same reason that a negligence
claim is not an adequate remedy for plaintiff for all but claims (5) and (6) – namely the lack of any actual
injury to person or property – the doctrine of *respondeat superior* is inadequate for those claims as well.
That is, because the doctrine still is based on the alleged tortious actions of the GEO defendants, suing
The GEO Group, Inc., does not help plaintiff.

The undersigned also finds that the doctrine of *respondeat superior* provides inadequate relief for
claims (5) and (6) as well, but for a different reason.  It is true that at least one federal court of appeals has
found suit "under a respondeat superior theory" to be an available alternative remedy. Holly, 434 F.3d at
297.  The better view, though, is that there must exist "[a]n alternative cause of action for damages
against an individual defendant." Peoples, 422 F.3d at 1101 (emphasis added).  Indeed, as discussed
above, Bivens "is concerned solely with deterring the unconstitutional acts of individual officers."
Malesko, 534 U.S. at 522; see also Peoples, 422 at 1101.  Thus, the Supreme Court found an implied
cause of action in Davis, because the only available alternative remedy was an FTCA claim against the

1    United States, and "the threat of" such a suit "was insufficient to deter the unconstitutional acts of

2    individuals." <u>Malesko</u>, 534 U.S. at 520 (citing <u>Davis</u>, 442 U.S. at 18-23).  Similarly, the threat of a

3    lawsuit against an individual employee's employer in state court under the doctrine of *respondeat*

4    *superior*, also is unlikely to have the kind of deterrent effect contemplated by the Supreme Court in

5    <u>Davis</u>.

6         Nor is the undersigned aware of any other alternative remedies available to plaintiff regarding his

7    claims here.  For example, unlike inmates or other detainees housed in federal prisons, both private and

8    public, plaintiff does not appear to have any "access to remedial mechanisms" at the Northwest Detention

9    Center, through which he may file grievances concerning the GEO defendants' alleged unconstitutional

10   acts. <u>See</u> <u>Malesko</u>, 534 U.S. at 74.  There also is no evidence of any state or federal avenue through which

11   plaintiff may file a suit in court for injunctive relief regarding his federal constitutional claims other than

12   through a <u>Bivens</u> action.[6]  The GEO defendants argue that plaintiff has failed to assert in his amended

13   complaint or elsewhere that alternative state law or other remedies are unavailable.  Accordingly, they

14   contend he cannot honestly make a claim that he has no other opportunity for relief, as he could sue in tort

15   or exhaust administrative remedies.

16        First, because the GEO defendants are bringing this motion to dismiss, it is their burden to show

17   there are alternative remedies available that would make <u>Bivens</u> inapplicable. <u>See</u> <u>Jenkins</u>, 395 U.S. at

18   421 (all material factual allegations contained in complaint taken as admitted and complaint is liberally

19   construed in light most favorable to plaintiff); <u>Lee</u>, 250 F.3d at 688; <u>Conley</u>, 355 U.S. at 45-46 (complaint

20   should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support

21

22        [6]In his amended complaint, plaintiff requests both injunctive relief and relief in the form of damages. (Dkt. #17, pp. 2-3,

23   48).  While there appears to be some question as to whether injunctive relief may be sought in a <u>Bivens</u> action, defendants did not
     raised this issue in their current motion.  Accordingly, the undersigned shall assume plaintiff can do so. <u>See</u> <u>Reuber v. United States</u>,

24   750 F.2d 1039,1061 (D.C. Cir. 1985) (injunctive relief traditionally presumed available regardless of whether plaintiff also may
     have <u>Bivens</u> action for damages); <u>Stephens v. Herring</u>, 827 F.Supp. 359, 364 (E.D.Va. 1993) (<u>Bivens</u> concerned only with damages,

25   not injunctive relief) (citing <u>Mullis v. United States Bankruptcy Court for the Eastern Dist. of Nev.</u>, 828 F.2d 1385, 1394 n.21 (9th
     Cir. 1987)); <u>but see</u> <u>Bunn v. Conley</u>, 309 F.3d 1002, 1009 (7th Cir. 2002) (<u>Bivens</u> claim can be brought for violation of

26   constitutional rights regardless of nature of relief sought); <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1019 (9th Cir. 1991) (prisoner seeking
     both damages and injunctive relief cannot bring <u>Bivens</u> action until available administrative remedies are exhausted); <u>Kane v. Winn</u>,

27   319 F.Supp.2d 162, 213 (D.Mass. 2004) (injunctive relief also can be sought via <u>Bivens</u> action) (citing <u>Farmer v. Brennan</u>, 511 U.S.
     825, 851 (1994) (remanding <u>Bivens</u> action in which prisoner sought both damages and injunctive relief); <u>see also</u> <u>Simmat v. United</u>

28   <u>States Bureau of Prisons</u>, 413 F.3d 1225, 1228 (10th Cir. 2005) (noting that some courts have treated Eighth Amendment claims
     against federal prison officials as <u>Bivens</u> actions even when injunctive relief is sought, whereas other courts have assumed separate
     non-statutory basis for seeking such relief).

1  of his claim which would entitle him to relief).  Defendants' contention that plaintiff could sue in tort,

2  furthermore, has been addressed above, and the undersigned found that it applies only to claims (5) and

3  (6).  In addition, the GEO defendants' contention concerning exhaustion of administrative remedies is, as

4  explained below, completely without merit.

5       There is no evidence before the Court that there are any administrative remedies available at the

6  Northwest Detention Center for plaintiff to exhaust.  The GEO defendants have not shown there are any

7  grievance or other procedures through which plaintiff can seek to have his complaints redressed.  The

8  GEO defendants state that plaintiff appears to quote from ICE contract and policies of The GEO Group,

9  Inc., in his complaint, but as the Court has no copies thereof, and no express language has been quoted

10  therefrom, it is difficult to say the least to determine whether any administrative remedies are provided for

11  therein.  The GEO defendants, nevertheless, urge this Court to analogize to the Prison Litigation Reform

12  ACT of 1995 ("PLRA"), 42 U.S.C. § 1997e, and Federal Tort Claims Act contexts.  The PLRA, however,

13  expressly applies to prisoners, not to immigration detainees such as plaintiff.[7]  In addition, only the

14  United States may be sued under the FTCA.  The GEO defendants asserts that both ICE and The GEO

15  Group, Inc. have administrative policies and procedures not unlike those of the PLRA, but again there is

16  nothing in the record to show that this is so.

17       The undersigned further finds the GEO defendants' other asserted reasons for asking this Court to

18  dismiss plaintiff's claims equally unpersuasive.  For example, the GEO defendants argue plaintiff has

19  described the actions they took in only general terms.  A review of the complaint, however, reveals that

20  the claims contained in the complaint appear to be sufficiently specific to survive a motion to dismiss.

21  Indeed, the GEO defendants have presented no argument that any of the individual claims fail to state a

22  claim concerning the particular constitutional violations alleged therein.

23       The GEO defendants next assert that none of the actions plaintiff alleges in the amended

24  complaint that they took occurred outside the course and scope of their duties and responsibilities as

25

26       [7]The PLRA requires prisoners to first exhaust all available administrative remedies prior to filing suit in federal court, and
27  defines the term "prisoner" to mean: "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced
   for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or
28  diversionary program." 42 U.S.C. §1997e(a) and (h).  The GEO defendants have not shown, let alone argued, that plaintiff meets
   this definition.

REPORT AND RECOMMENDATION
Page - 20

1  employees of The GEO Group, Inc.  As evidence of this, the GEO defendants quote from page 46 of that

2  complaint, wherein plaintiff states that defendants "Wigen, McBurney, Sadler, Bennett, and Melendez all

3  have acted within the policy and practice that they hold." (Dkt. #17).  On page 44, however, plaintiff

4  specifically states that the "policy" of those defendants placed him "into segregation to punish him in

5  violation of ICE National Standards and violated his rights under the Due Process Clause." (Id.).  Plaintiff

6  here thus was referring to the personal policy of the GEO defendants, not that of their employer or of ICE.

7  Indeed, he is claiming that this policy was in fact contrary to the dictates thereof.  The same is true with

8  respect to the statement on page 25 of the amended complaint, wherein plaintiff further claims the GEO

9  defendants had "a policy and practice of" reviewing documents printed from the library printer.  See (Id.,

10  pp. 22-25).

11         In addition, the GEO defendants express concern that in applying Bivens here, the Court may be

12  tempted to set standards on a case-by-case basis for private detention facilities, a role they assert is better

13  addressed through either administrative regulation or legislative action.  The GEO defendants concerns,

14  however, are misplaced.  In finding Bivens applicable only to those claims for which no showing has

15  been made that an alternative remedy is available, the undersigned merely is adhering to the express

16  language of Malesko, and the cautious approach taken by the Supreme Court in determining whether to

17  extend the reach of implied causes of action under Bivens.  Indeed, both Bivens and 42 U.S.C. § 1983 –

18  allowing civil actions to be brought to redress constitutional violations by persons acting under color of

19  state law – consistently have been used to cure constitutionally deficient acts without unduly burdening

20  the actors who are found to have performed them.

21         The GEO defendants further argue that allowing immigration detainees such as plaintiff to bring

22  Bivens actions against employees of a private corporation will place to much of a strain on the judicial

23  system, thereby opening the door to litigation of constitutional claims without first requiring that both

24  administrative and state law remedies be exhausted.  No showing has been made, however, that the

25  Courts will be flooded by claims of this nature.  Even if there will be an increase in such litigation,

26  however, that alone is not a valid reason to deprive litigants of the ability to protect their constitutional

27  rights.  In addition, the GEO defendants again have not shown that plaintiff has access to administrative

28  or state law remedies in this case, other than with respect to claims (5) and (6) discussed above.

1    The GEO defendants also appear to want to distinguish between those cases where a detainee has

2    alleged being subject to torture, abuse or other acts that seriously compromise his or her safety, and those

3    that do not involve Eighth Amendment, or, for immigration detainees, due process rights.[8]  Apparently,

4    the former deserve the protection of Bivens, while the latter do not.  However, while many cases dealing

5    with the application of Bivens to employees of a private entity under contract with the federal government

6    have concerned such instances of physical harm – most likely because those cases largely have arisen in

7    the private prison context – this does not in any way indicate the Supreme Court intended Bivens not to

8    apply to other constitutional violations committed by such individual defendants.  Indeed, nothing in the

9    language of Malesko supports such a narrow view of Bivens liability.

10   The GEO defendants' fear that applying Bivens will expose employees of private corporations to

11   individual liability for merely performing their job functions consistent with policies they are required to

12   follow simply has no foundation here, since, as discussed above, plaintiff claims the GEO defendants in

13   fact were not abiding by official policy.  The GEO defendants further argue that while the application of

14   Bivens to the prison setting may be appropriate, it is not appropriate to apply it to privately-run non-penal

15   detention facilities, because the employees of those facilities do not rely on prison policy, procedure or

16   methods to respond to the detainees they oversee.  This, of course, assumes facts not before the Court.

17   Once more, because no actual policies or procedures have been provided to the Court by either party, it is

18   unknown exactly what policies or procedures the GEO defendants in this case followed, or did not follow,

19   let alone what they in general or those at other detention facilities follow.

20   In their reply to plaintiff's response, defendants again argue that were the Court to imply a cause

21   of action against them, they may be held individually liable for acting consistent with the corporate

22   policies and procedures of The GEO Group, Inc.  As such, defendants assert, they would be put in the

23   untenable position of having to chose between termination due to insubordination or civil liability in

24   court.  But, once more as discussed above, plaintiff is claiming defendants had their own policy of

25   behaving toward him that violated both the policies and procedures of The GEO Group, Inc. and ICE, as

26   well as his federal constitutional rights.  Thus, only those employees who act contrary to such policies and

27

28
         [8]See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (claims of detainees not convicted of crimes are analyzed under
Fourteenth Amendment instead of Eighth Amendment).

REPORT AND RECOMMENDATION
Page - 22

1   procedures and to the federal constitution would be held accountable therefore.

2          The GEO defendants further assert that the courts have only applied <u>Bivens</u> in the prison context

3   in order to deter constitutional violations that result in substantial physical harm to the plaintiff.  Again,

4   though, the mere fact that this area is largely where <u>Bivens</u> has been addressed does not mean it cannot be

5   applied in other contexts.  Indeed, as noted above, at least one other court has extended <u>Bivens</u> to apply to

6   individual employees of a private corporation contracting to operate an INS detention facility. <u>See</u> <u>Jama</u>,

7   343 F.Supp.2d at 363.  Equally meritless is the GEO defendants' assertion that allowing implied causes of

8   action under <u>Bivens</u> for violations of the kind that plaintiff is alleging in this case – e.g., First Amendment

9   access to courts and freedom of expression – will not have a valuable deterrent effect.  Defendant argues

10  that this is because such complaints are outside the control of the individual employees.  But plaintiff is

11  claiming that if defendants had followed the policies and procedures governing them, instead of their own

12  personal policies, the constitutional violations would not have occurred.  Thus, the threat of civil liability

13  therefor is an effective deterrent.

14         Finally, the GEO defendants argue they should not be held to a different standard than The GEO

15  Group, Inc.  That is, if The GEO Group, Inc., as a private corporation, cannot be held liable under <u>Bivens</u>,

16  then neither should the individual employees who work therefor.  Such an argument, however, evinces a

17  fundamental misunderstanding of the Supreme Court's decision in <u>Malesko</u>.  As discussed above, in that

18  case, the Supreme Court made clear that the sole purpose of <u>Bivens</u> was to deter the unconstitutional acts

19  of individual officers, not the entities – whether public or private – for whom they work.  That is why the

20  Supreme Court in <u>Malesko</u>, and before that in <u>Meyer</u>, refused to imply a cause of action under <u>Bivens</u> for

21  the alleged unconstitutional acts of private or governmental entities.  That is also why the Supreme Court

22  has limited <u>Bivens</u> to cases involving such acts allegedly committed by individual defendants acting

23  under color of federal law.  Allowing plaintiff's <u>Bivens</u> claims in this case – other than claims (5) and (6)

24  – does not in any way create a result contrary to the holdings in those decisions.

25                                          <u>CONCLUSION</u>

26         For the foregoing reasons, the undersigned recommends the Court GRANT defendants' motion to

27  dismiss claims (5) and (6) of plaintiff's amended complaint concerning administrative segregation (Dkt.

28  #17, pp. 33-44) and placement in segregation (<u>Id.</u> at pp. 44-46) respectively, and DENY their motion to

REPORT AND RECOMMENDATION
Page - 23

1  dismiss regarding the remaining claims – (1) denial of access to state laws and forms and federal civil

2  rights/*habeas corpus* case law (Id. at pp. 3-10), (2) opening of special correspondence (Id. at pp. 22-27),

3  (3) freedom of expression (Id. at pp. 27-30), (4) return of outgoing mail (Id. at pp. 30-33), and (7)

4  reading and copying of legal documents (Id. at pp. 46-48) contained therein.

5       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the

6  parties shall have ten (10) days from service of this Report and Recommendation to file written

7  objections thereto. See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those

8  objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

9  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 1,**

10 **2008**, as noted in the caption.

11      DATED this 3rd day of July, 2008.

12

13

14

15      Karen L. Strombom
        United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 24